AUSAs: Catherine Ghosh, Jerry Fang, Meredith Foster, Sebastian Swett, Jacob Fiddelman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**24 MAG . 509**

UNITED STATES OF AMERICA

**SEALED COMPLAINT**

v.

Violations of 18 U.S.C. §§ 666 and 1951

MANUEL GARCIA,

COUNTY OF OFFENSE:
NEW YORK

                    Defendant.

SOUTHERN DISTRICT OF NEW YORK, ss.:

SEAN D. HUGHES, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Homeland Security – Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Solicitation and Receipt of a Bribe by Agent of Organization Receiving Federal Funds)

1. From at least in or about May 2018 through at least in or about February 2021, in the Southern District of New York and elsewhere, MANUEL GARCIA, the defendant, being an agent of an organization, and of a state, local, and Indian tribal government, and an agency thereof, to wit, the New York City Housing Authority ("NYCHA"), which received, in the calendar years 2018, 2019, 2020, and 2021, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of NYCHA involving a thing of value of $5,000 and more, to wit, GARCIA solicited and accepted a total of at least approximately $12,600 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $50,000.

(Title 18, United States Code, Section 666(a)(1)(B).)

## COUNT TWO
### (Extortion Under Color of Official Right)

2. From at least in or about May 2018 through at least in or about February 2021, in the Southern District of New York and elsewhere, MANUEL GARCIA, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, GARCIA, under color of official right, obtained money from NYCHA contractors, with their consent, that was not due GARCIA or his office.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

## OVERVIEW

3.      I am a Special Agent with HSI currently assigned to the Document and Benefit Fraud Task Force, and I have been personally involved in the investigation of this matter. I have been employed by HSI since June 2018. I and other members of the investigative team, which includes agents from HSI, the New York City Department of Investigation ("NYC DOI") – Office of the Inspector General for NYCHA ("NYCHA-OIG"), the United States Department of Housing and Urban Development – Office of Inspector General ("HUD-OIG"), the United States Department of Labor – Office of Inspector General ("DOL-OIG"), and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") (collectively, the "Investigating Agencies"), have experience with bribery and extortion investigations and techniques associated with such investigations.

4.      This affidavit is based in part upon my own observations, my conversations with other law enforcement agents and others, my examination of documents and reports prepared by others, my interviews of witnesses, and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents, including emails, and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where specifically indicated otherwise.

5.      As set forth in more detail below, there is probable cause to believe that MANUEL GARCIA, the defendant, an employee of NYCHA at all relevant times, solicited and accepted bribes from contractors in exchange for awarding no-bid contracts for work performed at NYCHA developments, and extorted contractors under color of official right.

## BACKGROUND REGARDING NYCHA AND NO-BID PROCESS

6.      Based on my training and experience, review of records and manuals maintained by NYCHA, discussions with NYCHA employees, and discussions with other agents with the Investigating Agencies, I have learned that:

a.  NYCHA is a New York City public entity that provides housing to low- and moderate-income New York City residents.

b.  NYCHA's operations are funded, in part, by grants from the United States Department of Housing and Urban Development ("HUD"). In each year from at least 2018 through 2021, HUD provided over $1.5 billion in funding to NYCHA, making up a substantial portion of NYCHA's budget.

c.  NYCHA procurements funded at least in part through federal funds must abide by various federal regulations, including that NYCHA must conduct all procurement transactions "in a manner providing full and open competition." As such, goods and services must

2

typically be purchased via a bidding process in which NYCHA receives multiple bids after outreach to multiple prospective bidders.

d.  When the value of a contract is under a certain threshold (sometimes called a "micro purchase," and which contractors often refer to as a "purchase order" or "PO" contract), designated staff at NYCHA developments may hire a contractor of their choosing without soliciting multiple bids in order to quickly procure goods or services.  This "no-bid" process is faster than the general NYCHA procurement process, and selection of the contractor requires approval of only the designated staff at the development where the work is to be performed.  As is relevant to this Complaint, the threshold for a no-bid contract was $5,000 until approximately June 26, 2019, and was then raised to $10,000.

e.  For no-bid contracts, designated NYCHA staff typically communicate with a contractor to request an estimate for the proposed work.  The contractor performs an initial site visit and then submits an itemized proposal to the designated staff.  The NYCHA employee submits this proposal electronically to the NYCHA Procurement Department, located at 90 Church Street, New York, New York, and upon approval by the Procurement Department a purchase order is issued.  After the Procurement Department issues the purchase order, the contractor then performs the work.  After the work is completed, a designated NYCHA development staff member performs a site visit.  If the staff member deems the contractor's work satisfactory, the NYCHA staff member approves the contractor's "statement of services" and submits it to NYCHA, which then issues payment directly to the contractor or to the contractor's bank account.

f.  NYCHA employees receive the NYCHA Human Resources Manual (the "Manual"), including periodic updated versions.  Versions of the Manual from at least 2016 to the present state that "Employees of NYCHA may *not*: . . .

- Accept a valuable gift as defined by the NYC Conflicts of Interest Board[1] from anyone that employees know or should know is seeking or receiving anything of value from the City or NYCHA.

- Accept anything from anyone other than NYCHA for doing their NYCHA job, except as may be expressly authorized by NYCHA. . . .

- Fail to report directly and without delay, to the Office of the Inspector General or the New York City Department of Investigation, any and all information concerning conduct that they know or should reasonably know to involve corrupt or other criminal activity or conflict of interest by any officer or employee of NYCHA or the City of New York which concerns their office or employment, or by any person dealing with NYCHA or the City of New York, which concerns their dealings with NYCHA or the City of New York. . . .

- Bribe, attempt to bribe, or solicit, give, agree to accept or accept a gratuity, benefit, money or anything of value in connection with their actions or duties as

---

[1] The NYC Conflicts of Interest Board defines a "valuable gift" as "any gift to a public servant which has a value of $50.00 or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form."

3

employees or in connection with the actions or duties of any other employee of NYCHA.

• Engage in any dishonest conduct, including but not limited to theft, fraud, [or] deceit, . . . falsifying or inappropriately altering any document, record, file or form of NYCHA or other entity, or knowingly submitting any falsified or inappropriately altered document, record, or form to NYCHA or other entity.

• Coerce or attempt to coerce, by intimidation, threat or harassment, any employee or resident of NYCHA or member of the public to engage in any activity that violates any law, or government regulation or any NYCHA rule or regulation."

## GARCIA'S EMPLOYMENT BY NYCHA

7. Based on my review of records provided by NYCHA, I have learned the following, in substance and in part, regarding the NYCHA employment history of MANUEL GARCIA, the defendant:

      a. From at least in or about May 2018 through at least in or about August 2018, GARCIA was employed as a superintendent at Mott Haven Houses, a NYCHA development located in the Bronx, New York.

      b. From at least in or about December 2019 through at least in or about January 2023, GARCIA was employed as a superintendent at Richmond Terrace Houses, a NYCHA development located in Staten Island, New York.

      c. GARCIA retired from NYCHA in or about January 2023.

## GARCIA'S SOLICITATION AND RECEIPT OF PAYMENTS

8. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-5")[2] who has performed work at NYCHA's Mott Haven Houses and Richmond Terrace Houses, among other developments,[3] I have learned the following, in substance and in part:

---

[2] The cooperating witnesses referenced in this Complaint are designated as "CW-5," "CW-7," and "CW-14" because this Complaint is being sought simultaneously with dozens of other Complaints charging other NYCHA employees arising out of the same investigation, and the Government has assigned unique numbers to cooperating witnesses across the entire investigation.

[3] CW-5 has provided information to law enforcement pursuant to a proffer agreement and has testified in the grand jury pursuant to an immunity order.

a. Since at least in or about 2018, CW-5 performed contracting work for NYCHA with certain contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.[4]

b. CW-5 began performing no-bid purchase order work at Mott Haven Houses in or about May 2018. CW-5 was awarded at least approximately three no-bid contracts at Mott Haven Houses from in or about May 2018 through in or about July 2018, during the time in which MANUEL GARCIA, the defendant, served as a superintendent at that NYCHA facility. During that time, CW-5 paid GARCIA a total of approximately $1,500 for approximately all three no-bid contracts that CW-5 received from GARCIA at Mott Haven Houses, which were worth approximately $5,000 in the aggregate.

c. CW-5 was initially referred to GARCIA by a NYCHA assistant superintendent who had worked at Mitchel Houses with GARCIA and who had required and accepted payments from CW-5 in connection with no-bid purchase order contracts (the "Mitchel Assistant Superintendent").[5] The Mitchel Assistant Superintendent told CW-5, in substance and in part, to go see GARCIA for work and to pay GARCIA for work at Mott Haven Houses. The Mitchel Assistant Superintendent called GARCIA in CW-5's presence and informed GARCIA, in substance and in part, that he would be sending CW-5 to GARCIA. After GARCIA awarded CW-5's first no-bid contract at Mott Haven Houses, GARCIA told CW-5 how much money GARCIA wanted in exchange for awarding no-bid contracts to CW-5.

d. In or about December 2019, GARCIA was assigned to Richmond Terrace Houses as a superintendent. CW-5 began performing no-bid purchase order work at Richmond Terrace Houses in or about May 2020. CW-5 was awarded at least approximately six no-bid contracts at Richmond Terrace Houses from in or about May 2020 through in or about February 2021, during the time in which GARCIA served as a superintendent at that NYCHA facility. During that time, CW-5 paid GARCIA approximately $1,500 for each of these no-bid contracts, which were each worth approximately $5,000.

e. CW-5 understood, based on CW-5's interactions with GARCIA and with other NYCHA employees who similarly required payments for work, that if CW-5 did not make

---

[4] CW-5's business partner ("CW-7") performed contracting work with CW-5 with the same contracting companies. CW-7 has also provided information to law enforcement pursuant to a proffer agreement and has testified in the grand jury pursuant to an immunity order. CW-5 and CW-7 have both worked at the same company for multiple years and still communicate with each other socially. During this investigation, CW-5 and CW-7 were at all times interviewed separately from each other and neither was present when the other made the statements described herein, and they were instructed by law enforcement not to discuss with each other the contents of their interviews or their grand jury testimony in connection with this investigation.

[5] Based on my review of employment records provided by NYCHA and my discussions with CW-5, I know that from at least in or about March 2018 through at least in or about May 2018, CW-5 performed contracting work at Mitchel Houses, the Mitchel Assistant Superintendent served as an assistant superintendent at Mitchel Houses, and GARCIA served as superintendent at Mitchel Houses immediately before his transfer to Mott Haven Houses.

5

payments to GARCIA, CW-5 would not be awarded additional no-bid contracts for work at Mott Haven Houses or Richmond Terrace Houses.

f.       On or about July 20, 2023, CW-5 reviewed photobooks containing a photograph of GARCIA among photographs of dozens of other individuals. CW-5 identified the photograph of GARCIA as "Manny" at Mott Haven and Richmond Terrace, the NYCHA employee to whom CW-5 had made payments in exchange for no-bid contracts from NYCHA.

g.       On or about July 20, 2023, in a separate meeting than the meeting with CW-5, CW-7 reviewed photobooks containing a photograph of GARCIA among photographs of dozens of other individuals. CW-7 correctly identified the photograph of GARCIA as "Manuel Garcia," a NYCHA superintendent in Staten Island to whom CW-5 had made payments in exchange for no-bid contracts from NYCHA.[6]

h.       CW-5 has a contact saved in CW-5's cellphone with the name "Mani Super" and a particular phone number ending in -0475 (the "GARCIA Number"). Based on commercial and law enforcement databases that I have reviewed, I have confirmed that the GARCIA Number is a personal phone number associated with GARCIA as well as with a residential address in New Milford, New Jersey (the "GARCIA Address"). Based on my review of NYCHA Human Resources records, I have confirmed that the GARCIA Address is the address listed for GARCIA.

9.       Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-14"),[7] who has performed work at NYCHA's Richmond Terrace Houses, among other developments, I have learned the following, in substance and in part:

a.       Since at least in or about 2020, CW-14 performed contracting work for NYCHA with certain contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

b.       CW-14 began performing no-bid purchase order work at Richmond Terrace Houses in or about February 2020. CW-14 was awarded approximately nine no-bid contracts at Richmond Terrace Houses from in or about February 2020 through in or about December 2022 (all of which were listed in NYCHA records as "closed," indicating that a NYCHA employee approved the completed work), during the time in which MANUEL GARCIA, the defendant,

---

[6] Although CW-5 was the individual who made the payments to GARCIA, CW-7 had contemporaneous knowledge of these payments because CW-5 and CW-7 typically went to the bank together to obtain the money before traveling together to the development where CW-5 paid GARCIA.

[7] CW-14 has provided information to law enforcement pursuant to a proffer agreement and has testified in the grand jury pursuant to an immunity order. CW-14 has never worked at any of the contracting companies where CW-5 and CW-7 worked. CW-5, CW-7, and CW-14 were interviewed separately and instructed by law enforcement not to discuss the substance of their interviews and grand jury testimony in connection with this investigation, and I have no reason to believe that CW-14 knows CW-5 or CW-7.

6

served as a superintendent at that NYCHA facility.[8]  During that time, CW-14 paid GARCIA approximately $700 for each of approximately three to four no-bid contracts at Richmond Terrace Houses that were each worth approximately $5,000.

   c.  CW-14 recalled that GARCIA demanded a payment in connection with the first no-bid contract that CW-14 performed at Richmond Terrace.  After CW-14 submitted the "statement of service" upon completing the contracting work, GARCIA, in substance and in part, demanded that CW-14 pay GARCIA before GARCIA would close the contract (thereby allowing CW-14 to be paid for the work CW-14 performed).  CW-14 understood, based on CW-14's interactions with GARCIA and with other NYCHA employees who similarly required payments for work, that if CW-14 did not make payments to GARCIA, GARCIA would not close the contract and CW-14 would not be awarded additional no-bid contracts for work at Richmond Terrace.

   d.  On or about November 6, 2023, CW-14 reviewed photobooks containing a photograph of GARCIA among photographs of dozens of other individuals.  CW-14 identified the photograph of GARCIA as "Mr. Garcia" at Richmond Terrace Houses, the NYCHA employee to whom CW-14 had made payments in exchange for no-bid contracts from NYCHA.  On or about December 14, 2023, CW-14 met again with law enforcement officers and reviewed the same photograph of GARCIA that CW-14 had previously identified as "Mr. Garcia," among photographs of several other individuals.  CW-14 identified the photograph of GARCIA as "Manny Garcia" at Richmond Terrace Houses.

  WHEREFORE, I respectfully request that a warrant be issued for the arrest of MANUEL GARCIA, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.


_____
SEAN D. HUGHES
Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations


Sworn to before me this 2d day of February, 2024.


_____
THE HONORABLE GARY STEIN
United States Magistrate Judge
Southern District of New York


---

[8] CW-14 recalled performing contracting work at Richmond Terrace between approximately 2019 and 2023.